(December I, 1897.)

# HALL v. EAGLE ROCK AND WILLOW CREEK WATER COMPANY.

[51 Pac. 110.]

IRRIGATION—CONSTRUCTION OF CANAL—DISTRIBUTION OF WATER.— Where a corporation organized for the purpose of constructing a canal to be used for the distribution of water for irrigating purposes, upon the lands of the stockholders in such corporation, whose stock, as shown by its certificates, represents five inches of water to each share of stock, and whose articles of incorporation provide for the assessment of paid-up stock, when authorized by a three-fourths vote of all the stockholders, it is proper and legal for such assessments to be made, and the collection thereof enforced under the provisions of the statute.

SAME—ORGANIZATION OF CANAL CORPORATION.—Where a corporation organized for the purposes above set forth has, for a period of eight years, conducted its business, made assessments, and collected the same as provided by title 4 of the Revised Statutes, which action of the corporation has been recognized and acquiesced in by all of the stockholders, the corporation will be deemed to have adopted the provisions of title 4 of the Revised Statutes, although the filing of the certificate indicating its election so to do has not been made.

SECTION 2609 OF THE REVISED STATUTES CONSTRUED.—The provisions of section 2609 of the Revised Statutes as amended by the act of 1891, applies only to the personal liability of stockholders.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

F. S. Dietrich, for Appellant.

The defendant company was organized in Idaho in 1884, and is in form a corporation; that is to say, it is one of a large class of companies existing in southern Idaho, where agricultural lands are artificially irrigated, organized not for profit, but for the purpose of controlling and distributing water for irrigation purposes. In such corporations the stockholders are farmers living along the line of the canal who never expect to receive any dividend, but by virtue of their stock are entitled to the use of a fixed amount of the water controlled by the company. No water is sold except indirectly by the sale of

stock, and no water is rented unless perchance there be a temporary inability to sell the stock, resulting in a temporary surplus of water. It is what is known as the "Utah" or "Neighborhood" plan of water distribution. Practically the only means the defendant, as one of these companies, has of maintaining itself, paying a water-master, making the necessary repairs, etc., is the dues or assessments exacted from its stockholders, and the practice has always been to levy assessments, such as may be necessary, *pro rate* upon the shares of stock, to be paid sometimes in labor and sometimes in cash. These assessments or dues are collected in the manner provided by law for the collection of assessments upon stock of ordinary corporations for profit. In February, 1895, such an assessment was, in the ordinary course of the business of the defendant, levied by its board for the purpose of raising money to pay its accrued and accruing expenses. Of this assessment the plaintiff, L. E. Hall, complains, and to enjoin the collection of which this suit is brought. The court's reasoning is a little difficult of apprehension. Apparently it concludes that merely because defendant's officers failed to file the certificate of its adoption of the 1887 law, the provisions of that law are in no way applicable to defendant, even though it actually elected to continue its existence thereunder, and as a matter of fact has continued its existence thereunder for nearly ten years. And what seems wholly incomprehensible is that in one paragraph of its brief conclusions of law, the court finds that the defendant did not adopt the law of 1887 so as to be bound by it, and in the very next paragraph it concludes that defendant has adopted the most important section of the law as amended by the later act. Can we then adopt the vital part without filing the certificate, but be unable to adopt the less important portion in the same manner? The provision of section 2650 as to the certificate is directory, only. The amendatory act respondent misconstrues; the intent of the amendment, Revised Statutes, section 2609, both originally and as amended, does not pertain to the liability of the stockholder to the corporation, or the assessments made by the corporation voluntarily for maintenance expenses, but defines the personal and individual liability of the stockholder to the creditor. If the statute

fixes a personal liability, and provides that it may be enforced by assessment, then, in a sense, a personal liability is involved in the assessment. But if the statute as it now stands provides that certain assessments may be voluntarily made upon paid-up stock, and the stock sold to pay the same, but the stockholder shall not be individually liable for the assessment, then there is no individual liability. The liability of the stockholder is thus no more "personal" or "individual" than that of a purchaser of mortgaged premises; the premises alone are liable. (*Worcester Turnpike Co. v. Willard,* 5 Mass. 80, 4 Am. Dec. 39; *Andover Turnpike Co. v. Gould,* 6 Mass. 40, 4 Am. Dec. 80; *Sparks v. Lower Payette Ditch Co.,* 3 Idaho, 306, 29 Pac. 134.) The court should look beyond the mere form of the defendant's organization and be governed by the actual fact and purpose. While we speak of the "stockholders" and "stock," "members" and "certificates of membership," would, in the premises, be more exact terms. The certificate entitles the member to certain privileges, mainly the use of water, for which he in turn has agreed to pay certain dues to be estimated by the directors upon the basis of the expenses of the company. As in any organization or association of such nature, no profit is expected and the member pays for the privilege or benefit. And under the general rule applicable to such organizations memberships or stock may be forfeited for nonpayment of dues. (Beach on Corporations, c. 29.) And assessments may be imposed by by-laws. (Idaho Sess. Laws, 1890-91, p. 173.)

S. C. Winters and Reeves & Terrell, for Respondent.

The undisputed facts show that the defendant corporation was originally organized in 1884 and the only power given the trustees or directors to levy assessments was calls upon subscribed stock, the par value of which had not been paid. (Idaho Rev. Stats. 1874-75, p. 621, sec. 10.) There was a liability in favor of creditors against the stock of corporations organized under the foregoing law, but the directors had no power to enforce such liability by assessment. This liability could only be enforced at the suit of a creditor against the stockholders of the corporation, individually. (Rev. Stats.,

*supra,* p. 623, sec. 16; *Sparks v. Lower Payette Ditch Co.,* 3 Idaho, 306, 29 Pac. 134.) The defendant corporation has never adopted title 4 of the Civil Code of Idaho. (Idaho Rev. Stats., sec. 2650.) If the defendant failed to adopt title 4 of the Civil Code, then it continued to operate under the Laws of 1874-75, *supra.* Under the common law the only liability of a stockholder of a corporation was to the corporation, for the amount unpaid on his stock. (Beach on Private Corporations, secs. 115, 143; Boone on Private Corporations, sec. 126; *Terry v. Little,* 101 U. S. 216.) The Laws of 1890-91, *supra,* simply re-enacts the common law as to the limit of liability, and the remedy against the stockholder and the limit of liability of a stockholder has been reached when the par or face value of his stock has been fully paid. (*Litimer v. Citizens' State Bank,* 102 Iowa, 162, 71 N. W. 225; *Addison v. Pacific Coast Milling Co.,* 79 Fed. 459; *Scott v. Windham,* 73 Miss. 76, 16 South, 206.)

HUSTON, J.—This action was brought by the plaintiff to restrain the defendant corporation from selling the shares of said plaintiff in said corporation for the purpose of paying assessments levied on said shares. Trial was had before the district court without a jury, and judgment rendered in accordance with prayer of the plaintiff's complaint, perpetually enjoining defendant corporation from selling, or in any manner disposing of, the stock of plaintiff in said corporation in payment of any assessment made thereon, the par value of which stock has been fully paid. From this judgment and decree this appeal is taken.

The defendant corporation is one of a class indigenous to the arid portions of our country, and to which, as they involve large interests, the legislation of the country has been especially directed. The defendant corporation was organized in 1884. The purpose of the organization is clearly shown by its articles of incorporation as they appear in the record, to wit, to furnish water for the irrigation of lands accessible for that purpose. It is true that the purpose expressed includes "mining and manufacturing," etc., but this may well be attributed to the natural desire to cover all contingencies which might

peradventure involve a profit; but the court finds as a fact that: "It has always been a provision of the by-laws of the defendant, and it has always been a practice and custom, that the stockholders were entitled to, and have had, the use of five inches of water for every share of stock owned by the stockholder. Such provision is also contained in the certificate of stock." The ultimate purpose of the organization would therefore seem to be quite apparent. It was not a corporation from which profit was intended to be made outside of the utilization of the water appropriated. No dividends or other profits were intended or anticipated beyond what was derivable from the use of the water. In construing the law applicable to corporations as prescribed by our statutes, we must not be unmindful of the character of, and the purposes for which, the organization under consideration was created. It is claimed by plaintiff that neither under the statutes existing at the time of its creation nor by virtue of its articles of incorporation is the defendant authorized or entitled to levy assessments, and, in default of payment, sell stock, the par value of which has been fully paid up by the stockholder. It is provided by article 3 of the certificate of incorporation of the defendant that "the capital stock of the corporation shall not exceed fifty thousand dollars ($50,000), divided into shares of fifty dollars ($50) each, which shall forever be and remain unassessable, unless otherwise voted by a three-fourths vote of all the stockholders." The court finds as a fact "that at a meeting of the defendant's stockholders, held March 17, 1888, it was duly and unanimously voted by three-fourths of the stockholders that its board of directors be empowered to levy assessments upon its capital stock not to exceed five per cent cash and ten per cent labor in one year." The plaintiff became a stockholder in defendant corporation in September, 1888, and must be presumed to have been acquainted with both article 3 and the action had thereunder. The plaintiff recognized and acquiesced in this action of the corporation for seven or eight years. While it is doubtless true that the defendant corporation never filed the certificate required by section 2650 of the Revised Statutes of Idaho of 1887, it is nevertheless true, and the fact is so found by the court, "that

immediately after the enactment of the Revised Statutes defendant levied an assessment, and every year since has levied assessments, and collected the same, in accordance with and in pursuance to the laws governing the assessment of stock and the collection of such assessment, and the sale of delinquent stock as contained in the Revised Statutes of Idaho adopted in 1887." When the corporation has for a period of eight years pursued a course recognized by the statutes, and known and acquiesced in by the plaintiff, and which course is absolutely essential to the very existence of the corporation, and not only to the utilization of its property for the purposes for which it was created, but for its preservation, it would not, in our view, be in accord with principles of equity or of common honesty and justice to permit the plaintiff to wreck the corporation upon the ground of a noncompliance with what may well be considered a mere clerical act. The facts that the defendant corporation was not organized for profit outside of the utilization of the water for the benefit of the stockholders; that each share of stock represented, not so much money, but five inches of water; that assessments were authorized, and were made to be paid two-thirds in labor and one-third in cash in each year—must not be overlooked in applying the statutes to this case. If the theory of the plaintiff is to be adopted, the destruction of all agricultural interests in this state dependent upon irrigation may be justly apprehended. Unless the paid-up stock of the corporations of the kind of the defendant can be assessed to meet the expense of keeping its property in repair, the utility of its property is lost, the purpose for which the corporation was organized is defeated, and the destruction of its property is only a question of a very short time. The duty of keeping its ditch or canal in repair, as well as the performance of other duties, all necessarily involving expense, are imposed upon the corporation defendant by the statutes under penalties. How are these to be met if the rule contended for by the plaintiff is to find recognition? We do not think that section 2609 of Revised Statutes, as amended by the act of 1891, affects the question involved in this case. That act refers to the personal liability of stockholders, and not to the liability of stock to assessments

made and necessary not only to carry out the purpose for which the corporation was created, but to preserve its property. To illustrate what appears to us the impracticability of plaintiff's position, let us suppose a case: The defendant corporation has constructed a canal at an expense of $100,000, which sum is represented by shares of stock fully paid up. The canal is paid for. Its purpose is to distribute water to the shareholders of its stock in proportion to the number of shares held by each at the ratio of five inches of water to every share of stock. The law makes it imperative upon the defendant corporation, not only to keep its canal in repair, but to employ one or more water-masters to superintend the distribution of water, besides other necessary help in keeping the canal in repair, all of which involves expense. How is such expense to be met? Is there any other practicable or feasible way than that pursued by the defendant? We think that under the laws of Idaho the stock in corporations of the character of the defendant in this case is subject to assessments or dues for maintenance expenses, and that the defendant corporation, by its acts, continued for a period of eight years, and recognized and acquiesced in by the plaintiff and all the other stockholders, amounted to an adoption of title 4 of the Civil Code. The judgment of the district court is reversed, with costs.

Sullivan, C. J., and Quarles, J., concur.